CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 23, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

N THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOSEPH N. STANLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:23-cv-00346 |
| | ) | |
| CHRISTOPHER T. BOCOCK, | ) | By: Elizabeth K. Dillon |
| | ) | Chief United States District Judge |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Joseph N. Stanley brings this action against defendant Christopher T. Bocock in relation to two search warrants that were executed against Stanley's Facebook and Google accounts in 2021. Stanley alleges two claims under 42 U.S.C. § 1983 against Bocock in his individual and official capacities as an officer of the Virginia State Police: (1) a violation of Stanley's First Amendment right to free speech, and (2) a violation of Stanley's Fourth Amendment right against unreasonable searches and seizures.

Pending before the court are two motions: (1) Stanley's motion for leave to file a second amended complaint (Dkt. No. 29) and (2) Bocock's motion to dismiss for lack of jurisdiction and failure to state a claim (Dkt. No. 16). The court held hearings on the motion to dismiss (Dkt. No. 25) and the subsequent motion for leave to file a second amended complaint (Dkt. No. 40). Both matters are now fully briefed and ripe for resolution. Because Stanley's claims against Bocock are futile, even as alleged in his proposed second amended complaint, Stanley's motion for leave to file a second amended complaint will be denied and this case will be dismissed with prejudice.

## I. BACKGROUND[1]

On April 12, 2021, Stanley posted 17 minutes of Rocky Mount Police Department surveillance video footage to his Facebook account. (Compl. Ex. 1, at 5, Dkt. No. 1-1.) On April 26, 2021, the Rocky Mount Police Department reported that their surveillance video footage was unlawfully taken and provided to Stanley. (*Id.*) Bocock, a Special Agent in the Bureau of Criminal Investigations with the Virginia State Police, was assigned to investigate the matter. On April 27, 2021, Bocock submitted an affidavit for a search warrant of all "documents, files, uploads, images (video or still) concerning or related to" Stanley's Facebook account in relation to the crime of computer trespass pursuant to Virginia Code Ann. § 18.2-152.4. (*Id.* at 4.) The affidavit indicated that only four employees had access to the surveillance system, two of whom were no longer employed with the Rocky Mount Police Department. (*Id.* at 5.) Additionally, the affidavit noted that "Stanley [had] made several posts to [F]acebook showing his disdain for the government and the Rocky Mount Police Department." (*Id.*) The search warrant was issued by the Circuit Court for the City of Roanoke on June 8, 2021. (*Id.* at 1.)

While searching Stanley's Facebook records pursuant to the issued warrant, Bocock learned of "information being shared with [] Stanley by multiple people via email to a google email address" belonging to Stanley. (Compl. Ex. 2, at 9, Dkt. No. 1-2.) Thereafter, on June 14, 2021, Bocock submitted an affidavit for a second search warrant seeking all Google records associated with Stanley's Gmail account. (*Id.* at 5.) Bocock received and reviewed hundreds of pages of records from Stanley's Facebook and Google accounts. (Sec. Am. Compl. ¶ 16, Dkt.

[1] The factual allegations in this section are taken from Stanley's proposed second amended complaint and the two search warrants that form the basis of the suit, which are attached as exhibits to Stanley's initial complaint. Although the court ultimately denies leave to amend, it discusses the second amended complaint because those are the operative allegations for its futility analysis discussed in Section II.C. *infra*.

No. 29-1.) Ultimately, no charges were ever brought against Stanley or anyone else. (*Id.* ¶ 17.) A special prosecutor was appointed to the case, and he ultimately concluded that there was "not sufficient evidence to prove either malice or that the copy [of the surveillance video] was obtained through an intentionally deceptive means," as required to prove computer trespass under Virginia Code Ann. § 18.2-152.4. (*Id.* ¶ 20.)

Stanley alleges that Bocock did not have probable cause to obtain the search warrants. (*Id.* ¶ 21.) To support this allegation, in addition to noting that no criminal charges were brought in the case, he contends that the "crime of 'computer trespass' . . . could not have occurred because no computer was involved in any of the acts described in the search warrant." (*Id.* ¶ 26.) Stanley notes that the police department had the computer allegedly used in the crime of "computer trespass" and could have examined its own contents to determine who copied and shared the video. (*Id.* ¶¶ 29–30.) Furthermore, Stanley was never an employee of the Rocky Mount Police Department, and therefore, as known to Bocock, was not one of the "four employees who [had] access to [the] surveillance system." (*Id.* ¶¶ 31–33.)

Instead, Stanley alleges that the search warrants were obtained "for the express purpose of invading [Stanley's] privacy" and obtaining information related to Stanley's "alleged 'disdain' for the government and the [] Rocky Mount Police Department." (*Id.* ¶ 17.) Furthermore, Stanley contends that the "warrants were designed and intended to harass and intimidate [Stanley] and to chill and interfere with the exercise of his constitutional rights of speech and association." (*Id.* ¶ 18.) Stanley alleges that, as a result of the search warrants, he has "curtail[ed] his posts and other speech criticizing the government." (*Id.* ¶ 19.) In addition, he "remains fearful of further retaliation against him by law enforcement and/or other governmental authorities," such that he refrains from "even considering contacting government authorities, like

calling 911, due to fear that his contact . . . will lead to or enable government authorities to further retaliate against him for his exercise of freedom of speech." (*Id.* ¶ 20.)

As noted, Stanley brings two claims under 42 U.S.C. § 1983 against Bocock, both in his individual and official capacities: (1) a violation of Stanley's First Amendment right to free speech, and (2) a violation of Stanley's Fourth Amendment right against unreasonable search and seizure.

## II. DISCUSSION

Bocock asserts that granting Stanley leave to file a second amended complaint would be both prejudicial and futile.[2] (Mem. Opp'n. Sec. Am. Compl., Dkt. No. 32.) Specifically, with respect to futility, he argues that the First and Fourth Amendment claims fail because both search warrants were supported by probable cause. (*Id.* at 3–7.) Although he contends that probable cause alone is enough to bar all of Stanley's claims, Bocock also argues that allowing a second amended complaint would be futile because he is entitled to Eleventh Amendment immunity for all official-capacity claims and qualified immunity for all individual-capacity claims.[3] (*Id.*)

The court finds that it lacks subject matter jurisdiction on all of Stanley's official-capacity claims because Bocock is entitled to Eleventh Amendment immunity. Regarding the

[2] In his response in opposition to Stanley's motion for leave to file a second amended complaint, Bocock reasserts the arguments that he made when he filed his initial motion to dismiss. (*See* Mem. Supp. Mot. Dismiss, Dkt. No. 17.) Therefore, those arguments are incorporated and addressed in the court's analysis below.

[3] Bocock also asserts that the claims relating to the Facebook search warrant are barred by the statute of limitations. Specifically, Bocock contends that any claims arising out of the Facebook search warrant accrued the day he filed the search warrant with the circuit court—April 28, 2021. (Mem. Supp. Mot. Dismiss 10, Dkt. No. 17.) The Fourth Circuit has held that "[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that *reasonable inquiry* will reveal his cause of action." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (emphasis added) (citation omitted). Bocock argues that a reasonable inquiry by Stanley would have revealed the search warrant at the time it was filed. But Stanley never received notice of the warrant from any law enforcement source and only found out about the warrant when Facebook notified him on June 16, 2021. (Dkt. No. 21 at 6). There would have been no reason to conduct an inquiry before that time. Thus, the court finds this later date to be the more reasonable date for the cause of action to accrue. Because Stanley filed his initial complaint on June 9, 2023, which is within two years of June 16, 2021, his Facebook claims are not time-barred.

individual-capacity claims, although the court finds that granting Stanley leave to file the second amended complaint would not be prejudicial to Bocock, it would nonetheless be futile. Stanley's First and Fourth Amendment claims fail as a matter of law because both search warrants were supported by probable cause. Because Stanley has failed to state a claim against Bocock, the court does not reach the issue of qualified immunity. As such, Stanley's motion for leave to file a second amended complaint will be denied, and Bocock's motion to dismiss will be granted.

**A. Bocock is Entitled to Eleventh Amendment Immunity for Official-Capacity Claims.**

Courts typically assess motions to dismiss for lack of jurisdiction based on Eleventh Amendment immunity under Fed. R. Civ. P. 12(b)(1). *E.g.*, *Reid v. James Madison Univ.*, No. 5:21-CV-00032, 2024 WL 3656775, at *4 (W.D. Va. Aug. 5, 2024); *see also Murphy v. Virginia*, No. 21-1253, 2022 WL 17484286, at *1 (4th Cir. Dec. 7, 2022) (noting district court's dismissal under Rule 12(b)(1) based on Eleventh Amendment immunity and reviewing it under Rule 12(b)(1) standard). "When an Eleventh Amendment argument relies on the pleadings alone, the standard is effectively the same under Rule 12(b)(1) as 12(b)(6)." *Reid*, 2024 WL 3656775, at *5 (citing *Va. Uranium, Inc. v. McAuliffe*, 147 F. Supp. 3d 462, 466–67 (W.D. Va. 2015)). "A Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Baltimore*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)). When evaluating a 12(b)(1) motion to dismiss, "the allegations in the complaint are assumed to be true under the same standard as in a 12(b)(6) motion, and 'the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Young v.*

*Bishop*, No. CV TDC-16-0242, 2017 U.S. Dist. LEXIS 28500, 2017 WL 784664, at *2 (D. Md. Feb. 28, 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

Under the Eleventh Amendment, "an unconsenting state is immune from suits brought in federal courts by her own citizens as well as citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). "This immunity extends to state agencies and other government entities properly characterized as 'arm[s] of the State.'" *Ortiz v. Higgs*, 2023 WL 8251314, *2 (4th Cir. 2023) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1997)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and, "[a]s such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). As an officer of the state, Bocock is entitled to immunity as to all official-capacity claims. *See, e.g.*, *Smith v. McCarthy*, No.3:08cv36, 2009 WL 50022, at *9–10 (W.D. Va. Jan. 7, 2009) (dismissing all claims against the Department of State Police and the official-capacity claims against a Department of State Police employee based on Eleventh Amendment immunity).

*Ex parte Young* provides an exception to Eleventh Amendment immunity, allowing federal courts to "exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (citing *Ex parte Young*, 209 U.S. 123, 154, 52 L. Ed. 714, 28 S. Ct. 441 (1908)). Stanley does not sufficiently allege the first prong of the *Ex Parte Young* exception—that there is an ongoing violation. Stanley's action involves two search warrants issued in 2021, and any alleged violations in relation to those warrants would have occurred during that time. Bocock was acting within his scope of authority as an officer of

the Virginia State Police when he obtained the warrants, and Stanley's alleged First and Fourth Amendment violations would have ceased when those searches concluded. Nothing in Stanley's amended complaint satisfies the first prong of the *Ex parte Young* exception. Instead, in conclusory fashion, Stanley claims that he is entitled to injunctive relief (Sec. Am. Compl. ¶ 50), and he argues that "the issue of whether Bocock was acting in his official capacity or beyond [] is a contested issue to be decided by a jury after hearing the evidence." (Mem. Opp. Mot. Dismiss 4–5, Dkt. No. 21.) However, simply stating that an issue is contested, without sufficiently alleging facts upon which to base subject matter jurisdiction, is not enough to survive a motion to dismiss. *See Adams v. Bain*, 697 F.2d 1213, 1215 (4th Cir. 1982) (noting that a court can grant a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction if "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based"). As such, Bocock is entitled to Eleventh Amendment immunity for the official-capacity claims against him.

**B. The Proposed Second Amendment is Not Prejudicial.**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15 (a)(2). Rule 15(a)(2) instructs courts to "freely give leave when justice so requires." *Id.* "Despite this general rule liberally allowing amendments, . . . a district court may deny leave to amend if the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)) (internal quotations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

Whether an opposing party will be prejudiced by an amendment "will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427. "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant] . . . .'" *Id.* (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). The further a case has progressed before an amendment "the more likely it is that the amendment will prejudice the defendant . . . ." *Id.* A court also looks to the "particular circumstances presented, including previous opportunities to amend and the reason for the amendment" in determining prejudice. *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (citations omitted).

Bocock argues that the second amended complaint was unduly delayed, untimely, and prejudicial. (*See generally* Mem. Opp'n. Sec. Am. Compl.) Bocock notes that Stanley knew of the deficiencies in his complaint when Bocock filed his first motion to dismiss on August 2, 2023. Stanley was granted leave to file his first amended complaint, with Bocock subsequently filing another motion to dismiss for lack of jurisdiction and failure to state a claim. During a hearing on that motion held March 13, 2024, Stanley mentioned curing deficiencies in an additional amended complaint, but he waited over two months before filing his second amended complaint with the court. Bocock argues that he would suffer undue prejudice if he had to respond to another amended complaint.

Although the court notes that Stanley was already given an opportunity to amend his

initial complaint, Bocock has failed to sufficiently show how an additional amendment would be prejudicial to him. The crux of Bocock's argument is that Stanley has been given ample time to cure any deficiencies in his complaint. However, "delay alone is not sufficient reason to deny leave to amend." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). The second amended complaint does not raise any new legal theories that would require extensive additional analysis on the part of Bocock. Furthermore, this case is still in the preliminary phases of litigation, which favors granting leave to file a second amended complaint. *See Moore v. Equitrans, L.P.*, 818 Fed. Appx. 212, 217 (4th Cir. 2020) (noting that a district court's discretion to deny a request for leave to file an amended complaint increases at later stages of litigation). As such, this court finds that granting leave for Stanley to file a second amended complaint would not be unduly prejudicial to Bocock.

**C. The Proposed Amendment is Futile.**

Traditionally, an amendment is futile if it is "clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. And "district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). The plausibility standard requires more than "a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). "In adjudicating a motion to dismiss, 'a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.'" *Rothy's, Inc. v. JKM Techs., LLC*, 360 F. Supp. 3d 373, 378 (W.D. Va. 2018) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).

**1. Probable cause bars Stanley's First Amendment claim.**

Stanley's First Amendment retaliation claim under 42 U.S.C § 1983 alleges that Bocock obtained search warrants for his Facebook and Google accounts because Stanley "expressed 'disdain' for the government" or the Rocky Mount Police Department.[4] (Sec. Am. Compl. ¶ 43.)

[4] The court notes that Stanley is not explicit in stating that he is bringing a First Amendment retaliation claim against Bocock, but the language used indicates he is. The court further notes that Stanley alleges "[t]he warrants were designed and intended to harass and intimidate plaintiff and to *chill* and interfere with the exercise of his constitutional rights of speech and association." (Sec. Am. Compl. ¶ 18 (emphasis added).) The Fourth Circuit has stated, "First Amendment retaliation is actionable because 'retaliatory actions may tend to *chill* individuals' exercise of constitutional rights.'" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (quoting *Am. Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993) (emphasis added)). Therefore, the court will treat Stanley's First Amendment claim under 42 U.S.C. § 1983 as a retaliatory search warrant claim.

He argues that the First Amendment "protects the rights of citizens to criticize government and police departments and to hold them accountable for their actions and inaction." (*Id.* ¶ 42.) As such, Stanley alleges that the search warrants were acts of retaliation against him for his exercise of freedom of speech. (*Id.* ¶ 20.) Stanley contends that the warrants were unreasonable and not supported by probable cause. (*Id.* ¶ 49.) Before addressing whether the search warrants issued for Stanley's Facebook and Google accounts were supported by probable cause, the court must first determine if probable cause defeats a retaliatory search warrant claim as a matter of law.

*a. Probable cause bars retaliatory search warrant claims.*

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U. S. 250, 256 (2006)). To state a First Amendment retaliation claim against Bocock, Stanley's complaint must allege facts supporting a reasonable inference that: (1) Stanley "engaged in protected First Amendment activity," (2) Bocock "took some action that adversely affected [Stanley's] First Amendment rights," and (3) "there was a causal relationship between [Stanley's] protected activity and [Bocock's] conduct." *Buxton v. Kurtinitis*, 862 F.3d 423, 427 (4th Cir. 2017) (citations omitted) (internal quotation marks omitted).

The Supreme Court has held that the existence of probable cause will generally defeat a retaliatory arrest claim.[5] *Nieves*, 139 S. Ct. at 1721–28; *see also Hartman*, 547 U.S. at 265 (finding that plaintiffs must plead and prove the absence of probable cause to prevail in a

[5] In *Nieves*, the Supreme Court did acknowledge an exception to the no-probable-cause requirement in bringing a retaliatory arrest claim. *See Nieves*, 587 U.S. at 407 ("[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." (citation omitted)). Stanley has not alleged this narrow exception in relation to his retaliatory search warrant claim.

retaliatory prosecution claim). "This 'no-probable-cause' requirement was instituted to address the 'complex causal inquir[y]' in determining 'whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct.'" *Nazario v. Gutierrez*, 103 F.4th 213, 237 (4th Cir. 2024) (citing *Nieves*, 587 U.S. at 402). In *Nieves*, the Supreme Court reinforced *Hartman*'s reasoning for requiring the plaintiff to plead and prove the absence of probable cause:

> [The no-probable-cause] showing provides a "distinct body of highly valuable circumstantial evidence" that is "apt to prove or disprove" whether retaliatory animus actually caused the injury: "Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." Requiring plaintiffs to plead and prove the absence of probable cause made sense, we reasoned, because the existence of probable cause will be at issue in "practically all" retaliatory prosecution cases, has "high probative force," and thus "can be made mandatory with little or no added cost."

*Nieves*, 587 U.S. at 400 (citations omitted).

However, neither the Supreme Court nor the Fourth Circuit has ruled on the issue of whether probable cause defeats a retaliatory search warrant claim. At least two district courts have held that it does. *See, e.g.*, *Weinhaus v. Steele*, No. 4:17cv1941 DDN, 2019 WL 3803477, at *12 (E.D. Mo. Aug. 13, 2019) (relying on *Nieves* to find that the "preliminary, cardinal issue" in a 42 U.S.C. § 1983 retaliatory search warrant claim is the existence of probable cause); *Fredin v. Clysdale*, No. 18-CV-0510 (SRN/HB), 2018 WL 7020186, at *7 (D. Minn. Dec. 20, 2018) (relying on *Hartman* to find that a retaliation claim failed as a matter of law due to the existence of probable cause for a search warrant), *report and recommendation adopted*, No. 18-CV-0510 (SRN/HB), 2019 WL 802048 (D. Minn. Feb. 21, 2019), *and aff'd*, 794 F. App'x 555 (8th Cir. 2020). This court also finds *Nieves* (retaliatory arrest claims) and *Hartman* (retaliatory criminal

prosecution claims) instructive in the context of retaliatory search warrant claims. For retaliatory prosecution and retaliatory arrest cases, "it is particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal conduct." *Nieves*, 587 U.S. at 402 (citation omitted). Retaliatory search warrant claims present the same problem. As such, "their related causal challenge should lead to the same solution." *Id.* A plaintiff bringing a retaliatory search warrant claim must sufficiently allege the absence of probable cause to survive a motion to dismiss. The court now turns to Stanley's argument that the Facebook and Google search warrants were not based on probable cause. (Sec. Am. Compl. ¶ 21.)

*b. Both search warrants were supported by probable cause.*

The totality of the circumstances test of *Illinois v. Gates*, 462 U.S. 213 (1983), governs whether an affidavit supports a finding of probable cause. Specifically, *Gates* notes "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that . . . evidence of a crime will be found in a particular place." *Id.* at 238. In reviewing a magistrate's decision, the reviewing court's duty "is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Id.* at 238–239 (citation omitted). Furthermore, "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236 (citation omitted).

Stanley lists several allegations that he claims establish the absence of probable cause for the searches, including the local prosecutor recusing himself, the special prosecutor declining to press charges, the warrants being sought in different jurisdictions than where Stanley resides, the broad scope of the warrants, and the apparent lack of any internal search for evidence already in

possession of the Rocky Mount Police Department. (Sec. Am. Compl. ¶¶ 7–35.) In sum, Stanley alleges that Bostock obtained general warrants to search his Facebook and Google accounts because he expressed "disdain" for the government and police department. Although the court must accept all factual allegations as true, it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC*, 680 F.3d at 365 (quoting *Giarratano*, 521 F.3d at 302). Many of Stanley's allegations supposedly undermining probable cause are "unwarranted inferences, unreasonable conclusions, or arguments," that the court need not discuss in detail. Moreover, many are irrelevant to the determination of probable cause. However, Stanley does make four arguments that warrant further discussion.

First, Stanley relies heavily on one sentence in Bocock's affidavit to build the substance of his argument: "Joe Stanley has made several posts to [F]acebook showing his disdain for the government and the Rocky Mount Police Department." (Compl. Ex. 1, at 5.) Stanley asserts that this is proof of a retaliatory motive for obtaining the search warrant rather than probable cause. However, the crime being investigated was that of computer trespass under Virginia Code Ann. § 18.2-152.4, which requires a showing of malicious intent. By noting Stanley's posts showing "disdain" for the government in the affidavit, Bocock is supporting this element of the crime. Taken in conjunction with the other material facts listed in the affidavit—namely that a 17-minute video belonging to the Rocky Mount Police Department was unlawfully taken and provided to Stanley, who subsequently posted the video to his Facebook account—a "practical, common-sense" inquiry shows that there was a "fair probability" that evidence of the crime of computer trespass would be found in searching Stanley's Facebook account. Subsequently, as a result of that Facebook search, Bocock learned of information being shared with Stanley by

multiple people through his Gmail account. An additional "common-sense" inquiry indicates that there was a "fair probability" that evidence of the crime would be found by searching Stanley's Google account. All of this information provides a substantial basis for the magistrate's conclusion that probable cause existed for both search warrants.

Second, Stanley uses the fact that the special prosecutor declined to press charges after Bocock's investigation as evidence establishing the absence of probable cause. (Sec. Am. Compl. ¶¶ 21–22.) The fact that charges were never brought against Stanley, or anyone else for that matter, is irrelevant to the issue of determining probable cause. *See, e.g.*, *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) ("In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched."). Stanley does not need to be a suspect in the case for his Facebook and Google accounts to be searched. Rather, as the Supreme Court has firmly established, probable cause only requires "a fair probability that . . . evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Furthermore, "probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence." *Id.* Although the record does not indicate what, if any, direct evidence was produced from the Facebook and Google search warrants, the fact that no charges were brought does not diminish or nullify the existence of probable cause.

Third, Stanley alleges that the crime of computer trespass could not have occurred because "no computer was involved in any of the acts described in the search warrant." (Sec. Am. Compl. ¶¶ 21–26.) Stanley notes that the affidavit describes "surveillance video footage" and argues that does not infer a computer was used in any way. (*Id.* ¶¶ 27–28.) As such, the

material facts noted in the affidavit do not support the finding of probable cause for the crime of computer trespass under Virginia Code Ann. § 18.2-152.4. However, "courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236. Furthermore, "computer data" under Virginia law is defined broadly as:

> [A]ny representation of information, knowledge, facts, concepts, or instructions which is being prepared or has been prepared and is intended to be processed, is being processed, or has been processed in a computer or computer network. "Computer data" may be in any form, whether readable only by a computer or only by a human or by either, including, but not limited to, computer printouts, magnetic storage media, punched cards, or stored internally in the memory of the computer.

Virginia Code Ann. § 18.2-152.2. The court's "practical, common-sense" reading of the affidavit supports the magistrate's determination that a "copy of the surveillance video" posted to Stanley's online Facebook account, with information being shared between multiple people and Stanley through his Google email address, encompasses "computer data" as defined under Virginia state law. As such, even without Bocock explicitly using the word "computer" in his affidavit, a reasonable magistrate would still find probable cause for the crime of computer trespass by noting the "surveillance video" was taken from the Rocky Mount Police Department's "surveillance system" and uploaded to the internet.

Lastly, to support the absence of probable cause, Stanley notes that the Rocky Mount Police Department possessed the computer allegedly used in the crime of "computer trespass" and could have examined its own contents to determine who copied and shared the video.[6] (Sec. Am. Compl. ¶¶ 29–30.) Instead, Stanley alleges, Bocock targeted him because he expressed

[6] There is no allegation regarding whether the suggested examination was or was not done—only that it could have been done.

"disdain" towards local law enforcement. (*Id.* ¶ 43.) However, probable cause only requires "some nexus between the suspected crime and the place to be searched." *United States v. Orozco*, 41 F.4th 403, 405 (4th Cir. 2022). Stanley does not point to any legal authority that indicates a search warrant is invalid if law enforcement chooses not to search another place. The affidavits before the magistrate related to the Facebook and Google accounts of Stanley. So, the court must consider whether the magistrate, looking at the totality of the circumstances, had a substantial basis for believing that evidence of computer trespass could be found in Stanley's Facebook and Google accounts. As noted above, Stanley's posting of the unlawfully-obtained video to his Facebook account, with additional information being shared through Stanley's Google email account, clearly support the magistrate's probable cause findings in the search warrants issued.

In his First Amendment retaliation claim, Stanley has failed to sufficiently allege facts to support his conclusory assertion that the Facebook and Google search warrants lacked probable cause. The magistrate made a "practical, common sense" determination that there was a fair probability that searching Stanley's Facebook and Google accounts would lead to evidence showing how Stanley came into possession of the video. As noted previously, the standard is not whether the target of the search is suspected of a crime. *Lalor*, 996 F.2d at 1582. The information included in Bocock's affidavit provided a substantial basis for the magistrate's conclusion that probable cause existed for both search warrants. As such, Stanley's First Amendment retaliatory-search-warrant claim fails as a matter of law.

**2. Probable cause bars Stanley's Fourth Amendment claim.**

Stanley claims that the search warrants issued "based on [his] alleged 'disdain' for the government and the police department[,] were not reasonable, were not supported by probable

cause, and violated the Fourth Amendment."[7] (Sec. Am. Compl. ¶ 49.) The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, a Fourth Amendment claim cannot survive if the search was supported by probable case. *See Pearson v. Callahan*, 555 U.S. 223, 241–42 ("[A] defendant challenging a search will lose if . . . the warrant issued was supported by probable cause.") (citing *United States v. Leon*, 468 U.S. 897 (1984)); *see also Bender's, Inc. v. Walker*, 1 Fed. App'x. 317, 323 (6th Cir. 2001) ("Where the Fourth Amendment is applicable, a duly authorized warrant supported by probable cause will defeat a challenge to a government-conducted search. Stated differently, where there is probable cause to obtain a warrant and the search is carried out pursuant to that warrant, the Fourth Amendment is not violated.") (citation omitted). As thoroughly discussed above, the probable cause standard required for search warrants, is not a high one, requiring only a "fair probability that . . . evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The court has already determined that the information included in Bocock's affidavits provided a substantial basis for the magistrate's conclusion that probable cause existed for both search warrants. *See* discission *supra* Section II.B.1.b. As such, Stanley's Fourth Amendment claim

---

[7] Stanley also claims that the search warrants issued are "akin to general warrants." (Sec. Am. Compl ¶ 17.) However, the search warrants had restrictions, including the limitation of searching the relevant Facebook records dating back to May 30, 2020, one day before the recording of the Rocky Mount Police Department surveillance footage took place. (Compl. Ex. 1, at 4–5.) The Fourth Circuit has noted that, "'a time-based limitation [is] both practical and protective of privacy interests' in the context of social media warrants." *United States v. Zelaya-Veliz*, 94 F.4th 321, 340 (4th Cir. 2024) (quoting *United States v. McCall*, 84 F.4th 1317, 1328 (11th Cir. 2023)). The Eleventh Circuit has indicated that "[c]loud or data-based warrants with a sufficiently tailored time-based limitation can undermine any claim that they are the 'internet-era version of a general warrant.'" *McCall*, 84 F.4th at 1328 (quoting *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017)). As such, the search warrants of Stanley's Facebook and Google accounts were not "akin to general warrants."

fails as a matter of law.

III. CONCLUSION

The court finds that all claims against Bocock in his official capacity are precluded by Eleventh Amendment immunity. Furthermore, because all of Stanley's remaining claims would fail to survive a motion to dismiss, granting him leave to amend would be futile. Therefore, Stanley's motion for leave to file a second amended complaint will be denied. Moreover, Bocock's initial motion to dismiss for lack of jurisdiction and failure to state a claim, prevails for the same reasons the second amended complaint would be futile. Accordingly, Bocock's motion to dismiss will be granted.

An appropriate order will issue.

Entered: September 23, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge